UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BONNIE MERAOU, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 04-CV-0102-CVE-FHM |
| | ) |
| THE WILLIAMS COMPANIES, INC. | ) |
| LONG-TERM DISABILITY PLAN, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff filed this action to recover benefits and enforce her rights under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1101 et seq. ("ERISA"). Plaintiff claims that the long-term disability ("LTD") benefits she was receiving under The Williams Companies, Inc. ("TWC") Long-term Disability Plan (the "Plan") were wrongfully terminated.

**I.**

Plaintiff was hired by TWC in 1987 as a systems analyst, making her responsible for inputting and retrieving data from a TWC computer system. Administrative Record ("Adm. Rec.") at BM/TWC.111-12, BM/TWC.250, BM/TWC.375, and BM/TWC.387 (subsequent references omit the Bates-stamp prefix). She worked as a systems analyst for approximately ten years, and also worked as a data entry clerk and administrative assistant. Id. at 251. All of these positions are sedentary jobs. Id.

As an eligible TWC employee, plaintiff became a participant in the Plan, which provides long-term disability benefits to certain participants. Id. at 402-08, 443. Suffering from osteoarthritis, cervical facet arthropathy, fibromyalgia, and depression, she was first absent from work on February 3, 1992. Id. at 1. She began receiving monthly disability payments under the plan in July 1992 and continued to receive them until August 1, 2002 (during which period she was also treated for a seizure disorder, irritable bowel syndrome, post-menopausal syndrome, and migraines).

Id. at 375, 144.  Before she began receiving disability payments, her annual wages at TWC were $32,967.  Adm. Rec. at 251.

There is no dispute that plaintiff was initially eligible for and awarded LTD benefits under the Plan, but TWC contends that plaintiff's benefits were terminated because she failed to continue to meet the policy definition of "disability."  The record includes the Plan as amended and restated January 1, 2002.  Id. at 400-61.  It defines "Total Disability" as follows:

> "Totally Disabled" or "Total Disability" means, during both the Elimination Period (defined below) and for the first twenty-four (24) months following commencement of benefits to a Participant under this Plan, the determination based upon conclusive medical evidence that a significant change in a Participant's physical or mental condition due to accidental injury, sickness, mental illness, substance abuse, or pregnancy prevents a Participant from performing the essential functions of such Participants's regular occupation or a reasonable employment option offered to the Participant by the company, and as a result such Participant is unable to earn more than 60% of the Participant's pre-disability Monthly Base Compensation.  After such twenty-four (24) month period, "Totally Disabled" or "Total Disability" means the inability of such Participant, based upon conclusive medical evidence, to engage in any gainful occupation for which he or she is reasonably fitted by education, training or experience, as determined by the Plan Administrator.

Id. at 403-04.[1]  The parties dispute whether plaintiff currently qualifies as "totally disabled" and unable to engage in any gainful occupation.  The Plan further provides that a participant may be required to provide additional information or to submit to examinations periodically in order to demonstrate continued total disability status.  Id. at 417-18.  The Plan provides that the Administrative Committee of the Plan has full discretionary authority to make determinations regarding benefits.  Id. at 429.  The Administrative Committee receives no compensation for its work as such.  Id.  TWC designated Kemper National Services, Inc. (now known as "Broadspire") as the independent claims administrator of the Plan.  While Broadspire managed the appeals process,

---

[1] The Elimination Period is a period of continuous Total Disability lasting for six months from the date such Participant becomes Totally Disabled.  Id. at 402.

the Administrative Committee made the final determination to deny plaintiff's appeal of the termination of her benefits. Adm. Rec. at 396-97.

On or about February 27, 2002, Broadspire requested that plaintiff supply an Attending Physician Statement, along with six months of current office, surgery, therapy, treatment and chart notes and other medical documentation from her treating physicians. Id. at 67-69, 144. Plaintiff responded by informing Broadspire that she had three different treating physicians: Shirley Welden; Frank Tomecek; and C. Scott Anthony. Id. By July 3, 2002, the only additional response Broadspire had received was an Attending Physician Statement from Dr. Welden. Id. At that point, Broadspire again requested that plaintiff provide Attending Physician Statements from all three physicians as well as supporting current medical records. Id. This request letter advised plaintiff that if this information was not submitted to Broadspire by July 30, 2002, her Plan benefits would be terminated. Id. at 68.

On August 6, 2002, still not having received the requested information, Broadspire attempted to reach plaintiff by telephone, but failed. Adm. Rec. at 144. On August 7, 2002, Broadspire notified plaintiff, in writing, that she was no longer eligible to receive Plan benefits and that she had a right to have the decision reviewed. Id. at 144-45. This August 7, 2002 letter regarding the termination of plaintiff's benefits recites that Kemper National Services, Inc. ("Broadspire") is the claim administrator and that disabled Plan participants, to continue to receive benefits, must (1) "provide medical information from [their] physician[s] or, if required, a physician or physicians selected by the Plan administrator;" (2) "remain under the regular and appropriate care and treatment of a qualified physician to facilitate [] recovery and return to a productive work life;" and (3) "be so prevented from performing the Essential Functions of any Gainful Occupation that [their] training, education and experience would allow [them] to perform." Id. at 60. The letter recites that

LTD benefits terminate upon a Plan participant's failure "to provide written proof" of the disability satisfactory to the Plan Administrator. Id. Furthermore, the letter describes requests for medical records made of plaintiff by Broadspire on February 27, April 24, May 16, and July 3, 2002, only one of which plaintiff partially fulfilled. Id. at 61. The letter gives notice of the termination of her LTD benefits and explains the appeals process. Id. A few weeks later, plaintiff submitted a written appeal of the decision to terminate her benefits, requesting a review of the medical records she had submitted. Adm. Rec. at 147-50, 230.

On August 22, 2002, plaintiff's primary care physician, Dr. Welden, sent a letter to the appeals division identifying the illnesses for which plaintiff continued to receive active treatment as "Fibromyalgia, Chronic Fatigue Syndrome with severe cognitive dysfunction, seizure disorder, lumbar disc disease, migraine headaches, severe depression, mild Rheumatoid Arthritis, Irritable Bowel syndrome and postmenopausal syndrome." Id. at 228. She asserts that plaintiff continued, at that time, to be "disabled from the conglomeration of these illnesses," that she had recently lost her anesthesiologist and was having difficulty getting an appointment with another, that she was scheduled to receive facet joint ablation treatment and Botox injections for the fibromyalgia, and that she had received several lumbar epidurals for back pain. Id. Dr. Welden also listed plaintiff's medications as hydrocodone, klonopin, bentyl, estradiol cream, xanax, and providgil. Id.

In response to plaintiff's application for a review of the termination, Broadspire requested a peer-to-peer review by Tamara Bowman, M.D. (Internal Medicine/Endocrinology). After reviewing the medical records available to Broadspire at that time and speaking with Dr. Welden by telephone, Dr. Bowman concluded that the objective medical data in the file did not support a level of functional impairment that would render plaintiff unable to perform any occupation from August 2002 forward. Id. at 234-37. On November 4, 2002, an Employability Assessment Report

4

was completed for plaintiff. Id. at 250-52. The report concludes that plaintiff has transferable skills to sedentary skilled and semi-skilled work. Adm. Rec. at 252. On December 6, 2002, Broadspire upheld the original decision to deny plaintiff's LTD benefits. Id. at 254-257.

Plaintiff made a second appeal of the decision to terminate her benefits on January 22, 2003. In the course of the appeals process, Broadspire granted plaintiff multiple deadline extensions to allow her to submit complete medical records. Id. at 267, 303. At this stage, Dr. Ira Posner, Dr. Elana Mendelssohn, Dr. Russell Superfine, and Dr. Sheldon Zane conducted peer reviews of plaintiff's records and all four physicians determined that the data did not support plaintiff's continued disability. Id. at 109. The Administrative Committee subsequently denied plaintiff's appeal on December 11, 2003. Id. at 396-97.

## II.

On February 10, 2004, plaintiff filed suit, alleging defendant violated 29 U.S.C. § 1132 in denying her claim for benefits. As a plan beneficiary, plaintiff has the right to federal court review of benefit denials and terminations under ERISA. Specifically, section 1132(a)(1)(B) grants her the right to bring a civil action to recover benefits or to enforce her rights under the terms of the Plan. A denial of benefits challenged under section 1132(a)(1)(B) is to be reviewed under an arbitrary and capricious standard when a plan gives the administrator or other fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of a plan. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). The parties do not dispute that the Plan gives the Administrative Committee such discretionary authority.

The issue, then, is whether defendant acted arbitrarily and capriciously when it made the final decision to terminate plaintiff's LTD benefits. While the record supports a finding that plaintiff has experienced a great deal of pain, that is not the issue before the Court. See Fought v. Unum Life

Ins. Co. of America, 379 F.3d 997, 1002 (10th Cir. 2004) (observing that it is a "wise conservation of judicial resources not to have judges replicate the administrator's work."). The Court's role is to determine whether defendant's "interpretation was reasonable and made in good faith." Hickman v. GEM Ins. Co., 299 F.3d 1208, 1213 (10th Cir. 2002).

Indicia of arbitrary and capricious actions include lack of substantial evidence, mistake of law, bad faith, or conflict of interest by the fiduciary. Caldwell v. Life Ins. Co. of North America, 287 F.3d 1276, 1283 (10th Cir. 2002) (citing Sandoval v. Aetna Life and Cas. Ins. Co., 967 F.2d 377, 380 n.4 (10th Cir. 1992)). Under the two-tier "sliding scale" approach adopted by the Tenth Circuit, an "additional reduction in deference is appropriate" where there is an inherent or proven conflict of interest. Fought, 379 F.3d at 1006. It is plaintiff's burden to show such a conflict exists. If such a conflict is shown, "the plan administrator bears the burden of proving the reasonableness of its decision pursuant to [the Tenth Circuit's] traditional arbitrary and capricious standard." Id. However, plaintiff has not presented evidence that the Administrative Committee acted under a conflict of interest, so as to warrant less deference to its decision. Therefore, conflict of interest is simply weighed as one factor in determining whether there is an abuse of discretion. Id. at 1005.

The determinative inquiry in this case is whether defendant's decision is supported by substantial evidence. "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decisionmaker]. Substantial evidence requires more than a scintilla but less than a preponderance." Sandoval, 967 F.2d at 382 (internal citations and quotation marks omitted). The Court considers the record as a whole, Caldwell, 287 F.3d at 1282, but the Court considers only that information available to the plan administrator at the time the decision was made. Hall v. Unum Life Ins. Co. of Am., 300 F.3d 1197, 1201 (10th Cir. 2002).

An administrator's decision "need not be the only logical one nor even the best one. It need only be sufficiently supported by facts within [the administrator's] knowledge to counter a claim that it was arbitrary and capricious." Woolsey v. Marion Labs., Inc., 934 F.2d 1452, 1460 (10th Cir. 1991).

The Court must also "take into account whatever in the record fairly detracts from the weight of the evidence in support of the administrator's decision." Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994) (internal citations and quotation marks omitted). The Court gives less deference to an administrator's conclusions if the administrator fails to gather or examine relevant evidence. Kimber v. Thiokol Corp., 196 F.3d 1092, 1097 (10th Cir. 1999); see Caldwell, 287 F.3d at 1282. Yet, the Court "will not set aside a benefit committee's decision if it was based on a reasonable interpretation of the plan's terms and was made in good faith." Trujillo v. Cyprus Amax Minerals Co. Ret. Plan Comm., 203 F.3d 733, 736 (10th Cir. 2000).

### III.

Plaintiff argues that defendant's decision to terminate her benefits is arbitrary and capricous in light of the Social Security Administration's ("SSA") continued classification of her as disabled. The determination of disability under the Social Security regime cannot be equated with the determination of disability under the ERISA regime. Black & Decker Disability Plan v. Nord, 538 U.S. 822, 832 (2003) (ERISA does not require plan administrators to accord special deference to opinions of treating physicians; "if a consultant engaged by a plan may have an incentive to make a finding of 'not disabled,' so a treating physician, in a close case, may favor a finding of 'disabled.'").

Unlike the mandatory, nationwide Social Security program, "[n]othing in ERISA requires employers to establish employee benefits plans." Lockheed Corp. v. Spink, 517 U.S. 882, 887

(1996). While appellate courts agree that an SSA determination is not binding or even entitled to controlling weight, several consider it relevant to an ERISA determination. Compare Farfalla v. Mutual of Omaha Ins. Co., 324 F.3d 971, 975 (8th Cir. 2003), and Gallagher v. Reliance Standard Life Ins. Co., 305 F. 3d 264, 275 (4th Cir. 2002), with Buzzard v. Holland, 367 F.3d 263, 270 (4th Cir. 2004), Lopes v. Metropolitan Life Ins. Co., 332 F.3d 1, 6 n.9 (1st Cir. 2003), Whatley v. CNA Ins. Cos., 189 F.3d 1310, 1314 n.8 (11th Cir. 1999), Ladd v. ITT Corp., 148 F.3d 753, 755-56 (7th Cir. 1998), and Moller v. El Campo Aluminum Co., 97 F.3d 85, 88 (5th Cir. 1996). Nonetheless, in this case, defendant relied on peer reviews from numerous medical doctors in addition to the SSA determination and concluded that the latter did not overwhelm the substantial evidence that plaintiff was not "totally disabled" as defined by the Plan.

**IV.**

In summary, defendant's decision to terminate plaintiff's LTD benefits is an exercise of the discretion granted by the Plan. Viewing the record as a whole, defendant relied upon substantial evidence, including reports by five different doctors, who, although they never examined plaintiff, were familiar with the condition affecting her ability to work. The Court finds that defendant's decision to terminate plaintiff's LTD benefits was not arbitrary and capricious. Thus, affirmance of defendant's decision is appropriate.

**IT IS THEREFORE ORDERED** that defendant's December 11, 2003 final decision to terminate plaintiff's LTD benefits is hereby **AFFIRMED**. A separate judgment is filed herewith.

**DATED** this 20th day of January, 2006.

*[signature]*
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT